**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**BARTRAM YIHNI DABNEY (93-A-7310),**

                        **Plaintiff,**
    v.

                                                      **97-CV-489A(Sr)**

**MICHAEL MCGINNIS, RICHARD MORSE,**
**DENNIS RYAN, JAMES CASSELBERRY**
**AND M. SOLOMANE,**

                        **Defendants.**

---

### REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), to hear and report on all pretrial matters including dispositive motions. Dkt. ##32, 56.

Currently before the Court is a motion for summary judgment seeking dismissal of the complaint against defendants Michael McGinnis and Richard Morse with respect to plaintiff's cause of action for cruel and unusual punishment resulting from the application of restraints in the recreation yard and dismissal of the complaint against defendant Dennis Ryan for lack of personal involvement in an alleged assault upon plaintiff on October 22, 1997.[1] Dkt. #74. For the following reasons, it is recommended that defendants' motion be granted.

---

[1] Plaintiff's third amended complaint also asserts a claim for excessive use of force by defendant Casselberry and failure to intervene by defendant Solomane with respect to the incident of October 22, 1997. Dkt. #58.

## **BACKGROUND**

Plaintiff entered the custody of the New York State Department of Corrections ("DOCS"), in 1993 following his conviction upon a jury verdict to first degree manslaughter. *See People v. Dabney*, 231 A.D.2d 431 (1st Dep't 1996) ("The evidence that, clenching a concealed weapon in his fist and without warning or provocation, defendant walked up to the victim, who was engaged in conversation, and drove his weapon two to three inches into the victim's throat directly over the jugular vein, negated any theory of recklessness."). He is serving a sentence of twenty-five years to life. Dkt. #81, ¶ 8. Plaintiff has presented serious discipline problems at multiple correctional facilities since his commitment to DOCS, including violations for creating disturbances, harassment, threats, violent conduct, disorderly conduct, refusing direct orders, arson, possession of contraband, possession of weapons, smuggling, assault on an inmate, and multiple assaults on staff. Dkt. #80, Exh. B.

Southport Correctional Facility ("Southport"), is a maximum security correctional facility. Dkt. #51, ¶ 7. Inmates with long term special housing sentences and poor disciplinary records are transferred to Southport to serve their special housing sentences. Dkt. #51, ¶ 9. Inmates at Southport are confined to one-man cells around the clock, except for brief periods outside of their cells for exercise, showers, visits to the infirmary or other visits. Dkt. #51, ¶ 10.

Inmates at Southport are categorized by security status, with Level I denoting the highest security risk. Dkt. #51, ¶ 11. If a Level I inmate exhibits violent

behavior, the block sergeant may ask the Deputy Superintendent of Security for a restraint order against the inmate.  Dkt. #80, ¶ 5.  In accordance with 7 N.Y.C.R.R. § 305.4 (a), "[a]ny inmate assigned to an SHU who has [a] history of assaultive behavior and/or who presents a threat to the safety or security of himself/herself, other persons, or State property may be placed under a restraint order by the deputy superintendent for security . . . ."  The restraint order must "describe the types of restraints to be used and the manner in which they are to be applied (e.g., handcuffed in front or back, with or without waist chain, with or without leg irons).  7 N.Y.C.R.R. § 305.4(d).   The restraint order is valid for a maximum of seven days, but may be renewed by the deputy superintendent for security reasons.  7 N.Y.C.R.R. § 305.4(b).

By memorandum dated April 2, 1993, Deputy Superintendent for Security Services McGinnis informed the Sergeant for D-Block that "[d]ue to the extreme assaultive behavior exhibited by some "D" Block inmates, those inmates on Restraint Orders will be cuffed behind their backs with waist chains during exercise periods."  Dkt. #79, Exh. A.   McGinnis declares that this policy "was necessary to insure both the safety of staff and inmates."  Dkt. #79, ¶ 9.  Deputy Superintendent McGinnis became Superintendent of Southport in April of 1996.  Dkt. #79, ¶ 1.

Deputy Superintendent of Security Morse authorized weekly restraint orders against plaintiff, who was housed in D Block at the time, from March 4, 1996 through March 31, 1996 after plaintiff was found guilty of the following disciplinary

infractions: making threats, refusing to obey a direct order; movement violation; harassment; possessing a weapon; and assault on staff.  Dkt. #80, ¶ 7 & Exh. A.

Effective February 6, 1997, Superintendent McGinnis informed Deputy Superintendent Morse that all Level I inmates subject to a restraint order were to be cuffed behind their backs with a waist chain and leg irons.  Dkt. #79, ¶ 10.  In his memorandum seeking authority to implement this policy, Superintendent McGinnis stated that

> There has been an excessive number of assaults by SHU inmates during movement on Level I Companies.  Said assaults have resulted in injury to both inmates and Correction Officers. Therefore, I am implementing the following method of restraint described below in an effort to avoid any further injury to staff.
>
> All inmates under a restraint order on Level I will be cuffed behind their backs with a waist chain to eliminate the existing potential for any further assaults.

Dkt. #79, Exh. B.   The policy was approved by the Deputy Commissioner of DOCS "as long as we both agree only Level I with restraint order."  Dkt. #79, Exh. B.

Plaintiff, now residing in C Block, was placed on a restraint order for the week of February 15, 1997 after he was found guilty of making threats, refusing to obey a direct order, verbal harassment and violent conduct.  Dkt. #80, ¶ 10 & Exh. A.

Following a determination that plaintiff was guilty of violent conduct, interference, harassment, refusing a direct order and making threats, plaintiff was again

-4-

subject to a weekly restraint order between March 6, 1997 and March 31, 1997.  Dkt. #80, ¶ 11 & Exh. A.

On September 23, 1997, following charges of making threats and harassment while residing in A Block, Deputy Superintendent Morse again authorized a restraint order.  Dkt. #80, ¶ 12 & Exh. A.  That restraint order was reviewed and renewed weekly until December 1, 1997, during which time plaintiff committed additional violations, including harassment and threats on October 8, 1997; violent conduct, assault on staff and harassment on October 22, 1997 (after having been moved to B Block); and interference and harassment on November 20, 1997 (after having returned to D Block).  Dkt. #80, ¶ 12 & Exh. A.

Deputy Superintendent Morse declares that he "met with the block sergeants once a week to review all restraint orders and decide if they should be continued."  Dkt. #80, ¶ ¶ 5, 9, 11, 12.  He also declares that the restraint orders were issued against plaintiff "for security reasons in order to prevent future aggressive behavior" due to "the threat such behavior posed to the safety and security of the facility and the officials and other inmates" at Southport.  Dkt. #80, ¶ 13.

Superintendent McGinnis declares that restraints were not removed during the exercise period to "insure[] the protection of the staff and other inmates by preventing an inmate from throwing anything, as well as allowing for the safer removal of the inmate from the exercise yard."  Dkt. #79, ¶ 13.  Superintendent McGinnis states

that "[a]lthough plaintiff would not be able to exercise his arms during the one (1) hour, he may walk outdoors in the exercise yard and he could exercise his arms and other parts of his body while unrestrained in his cell." Dkt. #70, ¶ 13.

Plaintiff declares that there is no reason why his arms should not be released from the restraints in the exercise yard. Dkt. #88, ¶ 18. He also challenges defendants' suggestion that there is anything available to throw from the exercise yard. Dkt. #88, ¶ 18.

## DISCUSSION

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*,

140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; see *Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Eighth Amendment Claim**

Defendants argue that DOCS' policy of restraining certain inmates during exercise does not constitute a violation of the Eighth Amendment to the United States Constitution because it is justified by legitimate security concerns.  Dkt. #76, pp.5-7.

Plaintiff responds that there is a question of fact as to the necessity for requiring plaintiff to exercise in full restraints since defendants have failed to proffer any

evidence of a safety issue if the mechanical restraints were removed from the plaintiff in the exercise yard. Dkt. #89, p.3.

Exercise is a basic human need protected by the Eighth Amendment to the United States Constitution. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991); *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996); *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir. 1985); *Sostre v. McGinnis*, 442 F.2d 178, 193 & n.25 (2d Cir. 1971), *cert. denied*, 404 U.S. 1049 (1972).

> However, not every deprivation of exercise amounts to a constitutional violation. Rather, a plaintiff must show that he was denied all meaningful exercise for a substantial period of time. Factors to consider in making this determination are: (1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation.

*Williams v. Goord*, 142 F. Supp.2d 416, 425 (S.D.N.Y. 2001) (internal citations omitted).

With respect to justification, courts have recognized a "safety exception" which permits restrictions on an inmate's ability to exercise due to disciplinary needs or other unusual circumstances. *Williams*, 97 F.3d at 35; *Sostre*, 442 F.2d at 186. Thus, courts have upheld the use of restraints during an inmate's recreation period when prison officials deem the use of such restraints necessary to the safety and security of the facility, so long as there is some opportunity for the inmate to move around in the recreation area *See Morgan v. Rowland,* No. 3:01-CV-1107, 2006 WL 695813, at * 8 (D. Conn. March 17, 2006) (also noting room for inmates to perform calisthenics

unrestrained within their cells); *Malik v. Goord,* No. 02-CV-237 (W.D.N.Y. April 24, 2003), *aff'd* 61 Fed. Appx. 768 (2d Cir. 2003) (unpublished decision); *Dawes v. Coughlin*, 964 F. Supp. 652, 658-59 (N.D.N.Y. 1997), *aff'd* 159 F.3d 1346 (2d Cir. 1998); *Brown v. Coughlin*, No. 93-CV-633, 1995 WL 643349 (W.D.N.Y. Oct. 13, 1995); *but see Williams*, 142 F. Supp. 2d at 426-27 (denying summary judgment with respect to the use of restraints where there were conflicting assertions as to the inmate's ability to walk with the restraints in the recreation yard or to exercise unrestrained within his cell).

In the instant case, plaintiff was not deprived of the opportunity to participate in outdoor exercise *per se*, but his movement within the exercise yard was limited by the mechanical restraints and leg irons. However, plaintiff does not dispute Superintendent McGinnis' declaration that plaintiff was able to "walk outdoors in the exercise yard." Dkt. #70, ¶ 13. In addition, although plaintiff's opportunity for other out-of-cell activities was limited to showers, visits to the infirmary or other visits, plaintiff does not dispute that he "could exercise his arms and other parts of his body while unrestrained in his cell." Dkt. #70, ¶ 13; Dkt. #79, ¶ 7.

While plaintiff questions why his restraints could not have been removed once he was inside the exercise yard and then replaced at the conclusion of his exercise period, it is self-evident that increasing the number of times restraints must be placed upon an inmate increases the opportunity for an inmate already prone to

violence against corrections officers to engage in additional infractions.  Accordingly, the Court accepts Superintendent McGinnis' declaration that restraints were not removed during the exercise period to "allow[] for the safer removal of the inmate from the exercise yard."  Dkt. #79, ¶ 13

In each case, the restraint orders imposed upon plaintiff followed serious misconduct, including making threats, refusing direct orders, movement violations, possession of a weapon, and assault on staff, each of which raise legitimate concerns as to the ability of corrections officers to safely transport plaintiff.  *See* Dkt. #80, ¶¶ 7, 10, 11, 12.  With the exception of the last restraint order, during which time plaintiff engaged in misconduct such as assault on staff, threats, violent conduct and harassment while subject to the restraint order, the duration of the restraints orders were limited to no more than 4 consecutive weeks, with at least an equal period of time without restraints separating each restraint order.  Dkt. #80, Exh. A & B.

Upon consideration of these factual circumstances, the Court is of the opinion that the reasoning set forth by the Hon. John T. Elfvin in the *Brown* case is equally compelling with respect to the instant case:

> This Court . . . concludes as a matter of law that being required to wear mechanical restraints in the manner required and during exercise periods does not constitute the unnecessary and wanton infliction of pain.  *See Whitley v. Albers*, 475 U.S. 312 (1985).  The measures taken against the plaintiff are reasonably related to a valid penological interest – *to wit*, the safety and security of correctional personnel and inmates.  The plaintiff has a proven track record of . . . violent . . . behavior.  He does not assert that

physical exercise was made impossible or that the additional restraints themselves imposed any constitutionally cognizable discomfort. Prison administrators normally are given wide latitude in the application of prison regulations. *See Rhodes v. Chapman*, 452 U.S. 337 (1981). Such shall be given here.
</blockquote>

1995 WL 643349, at *3 (footnote omitted).

## Personal Involvement in Use of Force

Defendant Ryan argues that it is undisputed that he was not present or involved in the use of force against plaintiff on October 22, 1997 and that plaintiff's allegation "that upon information and belief, Ryan's assignment of Casselberry was done with the specific intent to provoke [plaintiff] into a confrontation with Casselberry" is without factual basis. Dkt. #76, pp.9-10. In support of this argument, Lt. Ryan declares that

<blockquote>
On October 22, 1997, I was assigned to complete a hearing with respect to inmate Dabney and Officer James Casselberry was assigned as my escort officer. Such assignment was a bid job and was scheduled by the planning lieutenant. I had no input into who was going to be assigned as escort officer. Furthermore, on that day, I had no reason to believe officer Casselberry and inmate Dabney would become involved in any incident during the escort to the disciplinary hearing. Nor was I present during such incident.
</blockquote>

Dkt. #75, ¶ 6.

Plaintiff responds that there is a question of fact as to Ryan's knowledge of C.O. Casselberry's bias against plaintiff. Dkt. #88, ¶ 26. Specifically, plaintiff avers that C.O. Casselberry was biased against him because, when questioned by a local

police agency about an incident involving another inmate and C.O. Casselberry, plaintiff stated that he had not witnessed the incident. Dkt. #88, ¶ 26. Plaintiff avers

> that Casselberry held that against [him], and that this was common knowledge throughout [Southport], and known to Defendant Ryan prior to sending Casselberry to your deponent's cell to escort him to a hearing. By giving [Casselberry] that assignment, with knowledge of Casselberry's bias toward your deponent, he contributed to your deponent's assault on October 22, 1997.

Dkt. #88, ¶ 26.

It is well settled that the personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to an award of damages under § 1983 and that the doctrine of *resondeat superior* is insufficient. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy the wrong; (3) created, or permitted continuation of, a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In the instant case, Lt. Ryan's declaration that he "had no input into who was going to be assigned as escort officer;" and "had no reason to believe officer

Casselberry and inmate Dabney would become involved in any incident during the escort to the disciplinary hearing," coupled with Lt. Ryan's absence from the scene of the incident is sufficient to establish Lt. Ryan's lack of personal involvement as a matter of law.  Dkt. #75, ¶ 6.  The fact that C.O. Casselberry was assigned to escort inmates to disciplinary hearings before Lt. Ryan does not make Lt. Ryan responsible for C.O. Casselberry's allegedly improper actions.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motion (Dkt. #74), be **GRANTED**  and that the complaint be dismissed against defendants Michael McGinnis and Richard Morse with respect to plaintiff's cause of action for cruel and unusual punishment resulting from the application of  restraints in the recreation yard and that the complaint be dismissed against defendant Dennis Ryan for lack of personal involvement in an alleged assault upon plaintiff on October 22, 1997.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:    Buffalo, New York
          March  31, 2006

                                        **S/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**